UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUAN LAM, | No. 2:21-cv-1835 TLN AC P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| PAUL THOMPSON, | |
| Respondent. | |

Petitioner, a federal prisoner proceeding pro se, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Before the court is respondent's motion to dismiss the petition.  ECF No. 7.  Petitioner has filed a reply.  ECF No. 8.  For the reasons stated below, the undersigned will recommend that respondent's motion be granted.

I.  RELEVANT BACKGROUND

Petitioner is an inmate who is currently housed at the Federal Correctional Institution – Herlong ("FCI-Herlong").  In January 2018, in the Northern District of California, petitioner was found guilty of fraudulent use of an unauthorized access devise and aggravated identity theft in violation of 18 U.S.C. §§ 1029(a)(2) and 1028A(a)(1).  He was sentenced to serve 24 months in federal custody, followed by a 3-year term of supervised release.  He was also ordered to pay a

1

$200.00 special assessment and $14,174.50 in restitution.[1]  ECF No. 7 at 2 (motion to dismiss); ECF No. 7-2 at 11-17 (judgment in criminal case).[2]  Petitioner began serving his sentence on June 14, 2021.  ECF No. 7 at 2.

At the time the motion to dismiss was filed, Bureau of Prisons ("BOP") records indicated that petitioner's projected release date, including an adjustment for 83 days of FSA time credits, was December 1, 2022, assuming he receives good conduct credit.[3]  ECF No. 7 at 2; ECF No. 7-2 at 8, 24.  The motion states that under the First Step Act ("FSA"), petitioner has met the criteria for time credit eligibility and has received a determination that he has obtained 83 days of FSA time credits, which have been applied towards discretionary pre-release custody.  ECF No. 7 at 2.

## II. THE PETITION

In a fill-in-the-blank freeform petition, petitioner, an inmate at FCI-Herlong, asks the court to provide declaratory relief that prospectively establishes the earned credit to be applied to a future early release date.  ECF No. 1 at 1.  The petition primarily consists of a narrative identifying the allegedly improper ways that the BOP is applying the FSA which, in turn, slows his ability to accrue earned time credits under the statute that can then be applied towards his earlier release from prison.  See generally id.  They include respondent purportedly backtracking on representations that earned time credit accrued for early release due to participation in EBRR programing and productive activities, as well as respondent being selective regarding the start dates of credit accrual for certain productive activities.  ECF No. 1 at 2.

Petitioner argues that this inconsistent application, as well as the inconsistent, discretionary distinctions the BOP has made regarding programs, programming and productive activities that are eligible for credit under the FSA, violate the Equal Protection Clause.  ECF No. 1 at 3.  In sum, petitioner argues that the manner in which the BOP has chosen to interpret and

---

[1] The 2241 petition filed by petitioner is not on the court's form.  See ECF No. 1.  As a result, the offense, plea and sentencing facts are taken solely from respondent's motion to dismiss and its attachments, the latter of which, are readily verifiable.  Petitioner does not dispute the offense, plea and sentencing facts in his reply.  See generally ECF No. 8.
[2] The court notes that the criminal docket filed at ECF No. 7-1 appears to be unrelated to petitioner's case.
[3] This date is as of February 2022, when the motion to dismiss was filed.

2

implement the crediting system under the FSA intentionally undermines the law. Id. at 2-4. Petitioner also claims that he is entitled to have any credits he has earned immediately applied towards his early release, instead of waiting until the January 2022 phase-in date.[4] Id. at 4-5.

Petitioner asks the court to issue declaratory relief in the form of an order that: (1) directs the BOP to immediately credit all work and educational programming that he earned after the enactment of the FSA towards his early release; (2) voids BOP directives, statements and handbooks that directly contradict legislative intent; and (3) calculates his days of credit and orders the BOP to apply them towards his early release. ECF No. 1 at 5-6. He contends that because the petition simply asks the court to make a legal determination on a narrow dispute of statutory construction, pursuant to Coleman v. U.S. Parole Commission, 644 F.3d 159, 162 (3rd Cir. 2016), and Fraley v. United States Bureau of Prisons, 1 F.3d 924 (9th Cir. 1991), he was not required to exhaust administrative remedies. ECF No. 1 at 1.

III. FIRST STEP ACT

A. Historical Origins

The First Step Act of 2018[5] was created and implemented by Congress to further criminal justice reform. It is "a remedial statute intended to correct earlier statutes' significant disparities in the treatment of cocaine base (also known as crack cocaine) as compared to powder cocaine." United States v. Wirsing, 943 F.3d 175, 176 (4th Cir. 2019); United States v. White, 984 F.3d 76 89 (D.C. Cir. 2020) (quoting Wirsing). Offenses covered by it are federal criminal statutes that were committed before August 3, 2010, the penalties for which were modified by specific sections of the Fair Sentencing Act of 2010.[6] It was enacted on December 21, 2018.

B. Statutory Implementation and Execution

Under the FSA, the Attorney General, in consultation with the Federal Bureau of Prisons and other federal entities, was tasked, in relevant part, to review existing prison risk and needs assessment systems and to develop recommendations regarding evidence-based recidivism

---

[4] January 2022 was the deadline to phase in programming and provide EBRR programs and productive activities for prisoners. See 18 U.S.C. § 3621(h)(2)(A).
[5] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).
[6] Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 404(a), 124 Stat. 2372 (2010).

reduction ("EBRR") programs and productive activities ("PAs") that were the most effective at reducing recidivism. See 18 U.S.C. § 3631(a)-(b). Thereafter, within 210 days of the FSA's enactment,[7] the Attorney General was to develop and publicly release a risk and needs assessment system that would be used to determine the risk of recidivism for each prisoner, as well as the type and amount of EBRR programming that was appropriate for each prisoner, and then assign prisoners to programming accordingly. See 18 U.S.C. § 3632(a)(1), (3). The assessment system developed was also tasked with determining when to provide incentives and rewards for successful participation in EBRR programs and PAs, as well as with determining when to transfer prisoners into prerelease custody or supervised release. See id. at (a)(6)-(7).

Within 180 days of the Attorney General's completion of the assessment system,[8] the Director of the Bureau of Prisons was to implement and complete the initial intake risk and needs assessment for each prisoner; begin to assign appropriate EBRR programs and PAs based on them and expand the EBRR programs and PAs it offered. See 18 U.S.C. § 3621(h)(1)(A)-(B). Thereafter, the BOP was to provide EBRR programs and PAs for all prisoners within two years of the BOP completing the risk and needs assessment for each prisoner.[9] Id. at (h)(2)(A). This was called the "phase-in" period. During this two-year period, which culminated on January 15, 2022, priority for EBRR programs and PAs was given based on a prisoner's proximity to a release date.[10] Id. at (h)(3).

### C. Application of Time Credits

Under the FSA, when a prisoner successfully completes an EBRR program or a PA, he earns 10 days for every 30 days of successful participation. 18 U.S.C. § 3632(d)(4)(A)(i). In addition, if the BOP has determined a prisoner is at a "minimum" or "low" risk of recidivating,

---

[7] The court takes judicial notice of the fact that 210 days from December 21, 2018, was July 19, 2019.
[8] The court also takes judicial notice of the fact that 180 days from July 19, 2019 – the date the Attorney General was to complete the risk and needs assessment system – was January 15, 2020.
[9] The COVID-19 pandemic caused the BOP to limit the EBRR programs offered. See generally Keegan v. Derr, No. 22-00089 LEK-RT, 2023 WL 2403941, at *1 (D. Haw. March 8, 2023).
[10] In addition, priority to EBRR programs was to be given to prisoners with "medium" and "high" risk recidivism assessments, while access to PAs were given to prisoners with "minimum" and "low" risk assessments. 18 U.S.C. § 3621(h)(6).

and he has not increased his risk of recidivism over two consecutive assessments,[11] he will earn an additional 5 days of time credit for every 30 days he has participated in EBRR programming or PAs. Id. at (d)(4)(A)(ii). Time credit, however, cannot be earned for an EBRR program that a prisoner successfully completed before the enactment of the FSA or during official detention prior to the date a prisoner's sentence began. Id. at (d)(4)(B)(i)-(ii). In addition, the time credit awarded for EBRR programming and PAs is to be applied only to prerelease custody or supervised release. Id. at (d)(4)(C).

### IV. MOTION TO DISMISS

#### A. Respondent's Motion

Respondent contends that dismissal is warranted on the grounds that the court lacks jurisdiction under Section 2241 and that petitioner failed to exhaust administrative remedies prior to filing the instant petition. ECF No. 7 at 3-5.

Respondent argues that petitioner's demand is one for discretionary administrative action, and this court lacks jurisdiction to review the BOP's discretionary, individualized decisions regarding release to home confinement and the application of FSA time credits. Id. at 3. Respondent further argues that the petition should be dismissed because petitioner failed to exhaust the BOP's administrative remedies prior to filing the petition, leaving the court without a final ruling from the BOP regarding petitioner's demand for additional FSA time credits.[12] Id. at 4.

#### B. Petitioner's Reply

Petitioner's reply offers no clear response to respondent's arguments.[13] See generally ECF No. 8. Instead, the reply primarily accuses respondent's counsel of withholding or misrepresenting information and repeats arguments made in the petition. Id.

Petitioner does address respondent's exhaustion argument, by reiterating that exhaustion is

---

[11] Risk assessments and level adjustments for prisoners participating in EBRR programming and PAs are to occur no less often than annually. 18 U.S.C. § 3632(d)(5).
[12] The petition asserts that petitioner is entitled to 165 days of credit. ECF No. 1 at 1.
[13] The reply appears to be another boilerplate document in which petitioner has simply filled in blank spots with information that is unique to him. See generally ECF No. 8.

excused by Coleman, supra, and Fraley, supra. Id. at 2, 5. He also reiterates his request for declaratory relief in the form of applying the FSA to his sentence. Id. at 7.

### V. DISCUSSION

#### A. Subject-Matter Jurisdiction

##### 1. Applicable Law

Subject-matter jurisdiction refers to a court's power to consider a case. It can never be waived or forfeited. Adkison v. C.I.R., 592 F.3d 1050, 1054-55 (9th Cir. 2010). Bean v. Matteucci, 986 F.3d 1128, 1132 n.1 (9th Cir. 2021) (citation omitted). A district court has subject-matter jurisdiction to consider a habeas petition that alleges a violation of federal law under federal question jurisdiction. Bean, 986 F.3d at 132 (federal court jurisdiction is conferred by the allegation of an unconstitutional restraint). With Section 2241 petitions, a prisoner may establish such jurisdiction by showing he is in custody in violation of the laws or treaties of the United States. 28 U.S.C.§ 2241(c)(3); Huante v. Craven, 500 F.3d 1004, 1005-1006 (9th Cir. 1974) (stating custody requirement).

##### 2. Analysis

Petitioner ultimately asks the court to order respondent and/or the BOP to comply with the FSA immediately by calculating and applying specific EBRR and PA credits to his sentence. ECF No. 1 at 3-6. However, the FSA guidelines are clear: The BOP was not required to have developed and implemented the FSA until January 15, 2022. See generally 18 U.S.C. § 3621(h)(2)(A). Subject-matter jurisdiction requires a basic showing of harm, here, facts demonstrating a violation of federal rights. Because the BOP was not required to complete its FSA rollout before January 15, 2022, petitioner was unable to claim a violation of federal right prior to that date.

Petitioner filed the instant action in this court on September 25, 2021.[14] ECF No. 1 at 6

---

[14] The signing date of a pleading is the earliest possible filing date pursuant to the mailbox rule. See Roberts v. Marshall, 627 F.3d 768, 769 n.1 (9th Cir. 2010) (stating constructive filing date for prisoner giving pleading to prison authorities is date pleading is signed); Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other grounds by Pace v. DiGuglielmo, 544 U.S. 408 (2005).

(signature date on petition). At that time, the BOP was still in the "phase-in" part of FSA implementation, and the BOP had until January 15, 2022, to complete that process. Petitioner's argument that the BOP was improperly applying the FSA (ECF No. 1 at 2-4) was therefore premature. At the time petitioner filed the instant petition in September 2021, he cannot have experienced any actual harm. Accordingly, this court had no subject-matter jurisdiction over the petition then, and it should have been dismissed at the time it was filed. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570-71 (2004) (stating court jurisdiction depends on state of things at time action is brought).

To the extent petitioner has in fact received an FSA time credit determination since filing his petition, respondent correctly notes that this court lacks jurisdiction to review BOP discretionary, individualized, decisions concerning release to home confinement and application of time credits. The "failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." See Mejia Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981)); Gutierrez-Chavez v. I.N.S., 298 F.3d 824, 827 (9th Cir. 2002) (noting that relief under § 2241 is not available to challenge purely discretionary decisions), amended, 337 F.3d 1023 (9th Cir. 2003).

### B. Exhaustion

Even if subject-matter jurisdiction had been proper when petitioner filed the instant petition, the BOP should have been given an initial opportunity to address petitioner's grievances regarding FSA implementation and the awarding (or withholding) of credits. Under the FSA, proper administrative exhaustion requires either: (1) the full exhaustion of all administrative rights to appeal a failure of the BOP to bring a motion on the petitioner's behalf, or (2) the lapse of thirty days from receipt of such a request by the warden of the petitioner's facility – whichever is earlier. See 18 U.S.C. § 3582(c)(1)(A). It is only after one of these events occur that the court is authorized to reduce a petitioner's term of imprisonment.

It is true that administrative exhaustion is not statutorily required by Section 2241 itself. See Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004) (citing McKart v. United States, 395 U.S. 185, 194 (1969)). However, as a prudential matter, the courts require that administrative

remedies in a habeas petition be exhausted, because it is generally more efficient for the administrative process to go forward without interruption than to permit parties to seek aid from the courts at various intermediate stages. McKart, 395 U.S. at 194; Myers v. Bethlehem Shipbuilding Corp, 303 U.S. 41, 50-51 (1938) ("No one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.").

Furthermore, the FSA's own exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A) is a claim-processing rule that does not permit a district court to excuse a petitioner's failure to exhaust administrative remedies if the failure to do so is properly raised by the government. See United States v. Keller, 2 F.4th 1278, 1282 (9th Cir 2021) (citations omitted). The exhaustion requirement is mandatory. Id.; United States v. Hemmelgarn, 15 F.4th 1027, 1030-31 (10th Cir. 2021) (citing Keller and others); United States v. Kanohokula, 572 F. Supp. 3d 895, 901 (D. Haw. 2021) (citing Keller); Holden, 452 F. Supp. 3d at 973 (stating FSA does not provide court with authority to excuse defendant's failure to exhaust or to waive thirty-day waiting period). For these reasons, even if the court had jurisdiction to review the BOP's application of FSA time credits, the fact that petitioner had not completed the administrative exhaustion process prior to making these arguments still would have prevented this court from considering this matter. Therefore, respondent's motion to dismiss should be granted.

## VI. PLAIN LANGUAGE SUMMMARY FOR A PRO SE LITIGANT

When you filed your petition in September 2021, the BOP still had time to implement the FSA. You had not yet experienced specific, particularized harm by the BOP's application of the FSA. That means the court did not have authority to hear your case at the time it was filed. As a result, the law prevents this court from considering your petition.

Even if you had filed your petition after the BOP had run out of time to implement the FSA, and you had been able to show that you had been directly harmed, the fact that you did not first complete the BOP's administrative grievance process would have also prevented this court from considering your petition. The law requires that the BOP be given the first opportunity to consider any issues you have with how it is carrying out your sentence. This court cannot interfere with that process, nor can it be used to sidestep it.

For these reasons, the magistrate judge is recommending that your petition be dismissed without prejudice.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss the petition for writ of habeas corpus (ECF No. 7) be GRANTED;

2. This petition be DISMISSED without prejudice; and

3. The court DECLINE to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 23, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE